Greg W. Garrotto, State Bar #89542
LAW OFFICES OF GREG W. GARROTTO
1925 Century Park East, Suite 2000
Los Angeles, California 90067
Telephone (310) 229-9200
Fax: 310-229-9209
E-Mail: jjggarrotto@msn.com

Attorneys for Plaintiff
LEROY FREEMAN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY FREEMAN, <br><br> Plaintiff, <br> v. <br><br> KEN CLARK in his official capacity as Warden at California State Prison-Corcoran; CELIA BELL in her official capacity as Health Care CEO at California State Prison-Corcoran; DOES 1-10 <br><br> Defendants | Case No. <br><br> COMPLAINT FOR DAMAGES BASED ON VIOLATIONS OF CIVIL RIGHTS (42 USC 1983 et. seq.) <br><br> 1) EIGHTH AMENDMENT VIOLATIONS <br><br> REQUEST FOR JURY TRIAL |

**JURISDICTION**

1. This Court has jurisdiction of the within matter in that this Complaint is based on Title 42 U.S.C. Section 1983 as the Plaintiff is seeking redress for violations of his Civil Rights being guaranteed under the Eighth Amendment to the United States Constitution, to wit; protection against unreasonable and cruel and unusual punishment.

**GENERAL ALLEGATIONS**

2. Plaintiff LEROY FREEMAN ('Plaintiff') at all times mentioned in this Complaint was an incarcerated and convicted prisoner held in the custody of the California Department of Corrections and Rehabilitation ('CDCR'). Plaintiff now has received medical parole and resides in Sacramento County, California.

3. Defendant KEN CLARK ('Clark') at all times mentioned was the Warden at California State Prison-Corcoran ('CSP-COR'), a correctional facility established and operated by the CDCR.

4. Defendant CELIA BELL ('Bell') at all times mentioned was the CEO of Health Care at California State Prison-Corcoran and in that position had overall charge with the provision of medical care at CSP-COR.

4. Defendants 1-10 are healthcare workers duly licensed in the state of California to practice medicine, nursing and or other ancillary healthcare.

5. Defendants Does 1-3 were at all times medical doctors licensed in the State of California to practice medicine and were practicing medicine in which part of their duties were involved in the provision of health and medical care to the prisoners incarcerated at CSP-COR.

6. Does 4-10 at all times were nurses and other ancillary healthcare workers licensed and otherwise authorized to practice nursing or to provide other healthcare services to prisoners incarcerated in CSP-COR and their duties in part involved procuring medical and other healthcare for prisoners who exhibited a serious medical need.

7. The Plaintiff will seek leave of Court to amend this Complaint to insert the true names and/or capacities of such fictitiously named defendants named as Does 1-10 when the same have been ascertained.

8. Defendants Clark and Bell had the obligation under State, Federal and constitutional mandates to maintain the prison according to law so that it would comply with Eighth Amendment requirements. The Defendants and each of them were and are under a legal obligation pursuant to Plata v Schwarznegger (9th Cir. 2010) 754 F.3d 1088 to provide medical care that complies with Eighth Amendment mandates. In part this required said Defendants to oversee the provision of healthcare at CSP-COR and ensure that it would provide adequate healthcare to those inmates with serious medical needs. Said Defendants knew that prisoners incarcerated in said prison would be totally dependent on Defendants for the provision of medical care, and that without the Defendants acting according to law and or statute; to wit, inmates such as Plaintiff would not be able to receive prompt and appropriate medical care.

9. Said Defendants further had a responsibility to monitor those inmates and prisoners who were sick or ill in order to determine whether said inmates had serious medical needs to which response was required.

10. On or about November 20, 2018, Plaintiff had complaints of left arm pain and numbness that radiated to his neck and back which he submitted by appropriate channels to prison custodial staff. The Plaintiff was seen by Olivia Borbolla R.N., a registered nurse who by education, training and state licensure could not assess, screen, examine or diagnose patients with neurological and or orthopaedic issues. Plaintiff was directed by said nurse to be seen by his Primary Care Provider, Doe 1.

11. On November 21, 2018, Plaintiff was seen by his primary care provider, Doe 1. As a result of an assessment and review of a MRI diagnostic test, said primary care provider made a referral of Plaintiff to a neurosurgeon.

12. Between November 21, 2019 and January 11, 2019, Plaintiff underwent

diagnostic tests and examinations to both his cervical and lumbar spines which revealed serious progressive medical conditions which were life and health threatening and which needed immediate attention. This included degenerative changes and central canal narrowing at the lumbar spine L3-4 and L4-5 levels and moderate neural foraminal narrowing bilaterally at the lumbar spine L4-5 and L5 and S-1.

13. On December 26, 20218, the Plaintiff was seen by his primary care provider, Doe 1. At that time, the Plaintiff reported that his numbness and tingling in his left arm and neck pain had increased. The Plaintiff also reported at that time that he had begun to experience weakness down his legs. Said complaints were corroborated by his primary care provider. The Plaintiff was referred for an MRI of the cervical spine.

14. On January 7, 2019, the Plaintiff underwent an MRI of the cervical spine; the findings being the physical findings corroborated the Plaintiff's complaints; there being central canal narrowing and cord compression, most severe at cervical spine levels C5-6 and C6-7.

15. Even though Plaintiff had severe neurological symptoms which were progressing and were symptomatic of probable severely debilitating progressive disorders, the Plaintiff was not examined or assessed in person by a neurosurgeon. Rather, the Plaintiff was seen by 'telemedicine' where he talked to a neurosurgeon by way of video connection on two occasions, on January 11, 2019 and February 1, 2019. Said neurosurgeon advised 'prompt' surgical intervention for cervical spine surgery consisting of a posterior cervical fusion and foraminotomy and a nerve root block for Plaintiff's lumbar pain.

16. On February 6, 2019, regardless of the fact that the neurosurgery consultants had advised 'prompt' cervical spine surgical intervention, further

medical care was neither prompt or forthcoming in a timely manner.  There was a failure on the part of the Defendants by way of appropriate procedures and protocols to ensure that medical orders requiring exigent medical intervention be ordered and carried out.   Rather in this instance, Plaintiff's primary care physician, Doe 1, did not expedite the request for referral to a neurosurgeon for surgery.  Said Defendant instead placed orders for 'routine' neurosurgery resulting in an unacceptable delay of treatment.

17. The 'routine' order for neurosurgery did not result in the Plaintiff actually being sent for surgery for a four month period, all the while his symptoms, both cervical and lumbar becoming worse.  It was not until June 12, 2019 more than four months later, that the Plaintiff was actually transported to Sierra Vista Regional Medical Center in San Luis Obispo for surgical treatment.

18. The Defendants and each of them organized and made all the decisions with regard to whom the Plaintiff would be referred to for the purpose of performing the cervical spine surgery.  The Plaintiff was referred by the Defendants to Donald A. Ramberg M.D., a neurosurgeon.  There was no inquiry by Defendants to determine the competency of Dr. Ramberg.  If the Defendants had made a cursory investigation of Dr. Ramberg's qualifications, they would have determined that Dr. Ramberg was incompetent and unqualified to perform cervical spine surgery on Plaintiff.  Court records as well as the California State Medical Board records would have revealed that Dr. Ramberg was a defendant in at least two medical malpractice actions where substantial judgments had been returned and or settlements entered against Dr. Ramberg.  Defendants also would have known that Dr. Ramberg was under investigation by another state agency, the California State Medical Board for his competency as a neurosurgeon; an investigation that in fact resulted in an Accusation being filed by the California

Attorney General Office on behalf of the Medical Board of California, Department of Consumer Affairs to revoke his medical license (Accusation No. 800-2018-049179).

19. The Plaintiff was admitted to Sierra Vista Regional Medical Center from June 12-14, 2019.  At that time, Dr. Ramberg performed a cervical spine surgery consisting of a posterior cervical laminectomy and fusion at the C4 through C7 levels.  After surgery, on June 14, 2019, Plaintiff was returned to CSP-COR.

20. The Plaintiff was transported from Sierra Vista Regional Medical Center back to CSP-COR not by ambulance but by automobile with no accommodations for Plaintiff who was a post surgical patient who would be probably injured by travel provided without any precautions for Plaintiff's post surgical condition, health and welfare.

21. When Plaintiff was transported back to CSP-COR, initially he was not placed in a medical ward or unit as a post surgical patient.  He was placed back in his cell with no supportive medical and or nursing care.  It was only after Plaintiff's protestations that Plaintiff was placed in a medical unit with nursing and other ancillary health staff who did not have the knowledge or experience to provide appropriate care for Plaintiff.  As a result, the Plaintiff received care that was tantamount to no care during this period of time.

22. The Defendants and each of them failed to have appropriate systems in place to provide treatment for post surgical patients who were at risk for complications if appropriate post surgical care was not provided.   The Defendants put Plaintiff and other post surgical patients at risk by their failure to ensure that the systems of treatment at CSP-COR met the standard of practice in the community as well as constitutional standards.

23. Four days later on June 18, 2019, the Plaintiff reported pain and numbness to a registered nurse. That resulted in a 'in house' primary care provider assessing Plaintiff and making a referral of Plaintiff back to Dr. Ramberg and Sierra Vista Regional Medical Center. After consultation with the Chief Physician and Surgeon of said prison, the Plaintiff was referred to Kaweah Delta Medical Center in Visalia, California where he was found to have central cord syndrome secondary contusion and edema, as a result of which he is and remains permanently paralyzed and a quadriplegic. There was a failure on the part of Defendants to have trained medical and or nursing staff that could recognize potentially catastrophic spinal conditions such as central cord syndrome, provide treatment or refer to medical staff who could appropriate address the condition, and could provide the required immediate diagnosis and care.

24. The Plaintiff as a result has suffered a catastrophic injury; he is now dependent on others for all of his activities of daily living.

25. The Plaintiff is a victim of medical care that has failed to meet Eighth Amendment mandates. The Plaintiff had obvious serious medical needs. The Plaintiff was provided 'medical care' by persons who were known by the Defendants to have insufficient competence to evaluate, diagnose and care for serious neurological conditions which if left untreated, would lead to permanent debilitating results. Furthermore, the systems that were put in place by Defendants resulted in substandard care as exhibited by the fact that when exhibiting signs and symptoms of a serious neurological/spinal disorder which were confirmed by diagnostic test result, the Plaintiff was seen not in person by a specialist but by video conference or 'telemedicine' which was known to be insufficient to provide care and treatment which met with the applicable standard of practice. Finally, even though the recommendation of the neurosurgical medical specialist was for

prompt surgical intervention, said referral and intervention did not occur for four months.

26. The system of the provision of medical care at CSP-COR as designed, implemented and carried out by Defendants caused and causes unnecessary delays which detrimentally affect the medical condition of inmates with serious medical needs.  The Plaintiff was known to have a progressive disorder of his spine as early as November, 2018 and to require surgery as of December, 2018. Furthermore as of January, 2019, it was known to Defendants that prompt surgery was required; yet the Plaintiff was not transported for surgery until June, 2019.

27. The system of the provision of medical care at CSP-COR as designed, implemented and carried out by Defendants also was known to be insufficient to provide adequate aftercare for patients recovering from surgery in that there the staff was insufficient trained and experienced to monitor and care for patients which was known to probably result in complications and detrimental health results.

28. These deficiencies in the provision of medical care were known by Defendants to interfere with the provision of medical care for inmates with serious medical needs.  In the case of the Plaintiff, they resulted in delays in evaluation, care and treatment, unqualified medical staff providing care and treatment to Plaintiff which caused more damage than good; a failure to evaluate outside medical healthcare providers to whom the Defendants would refer; and, an inability to provide appropriate post surgical treatment.  The Defendants who were charged with creating, designing and administering said medical care knew that as carried out, it would cause harm to prisoners with serious medical needs who required prompt medical attention.  Defendants were deliberately indifferent to the probable risk of harm.

29. The Plaintiff has suffered great permanent and catastrophic injuries and related emotional distress. He has and will sustain special and general damages according to proof at the time of trial.

30. The Plaintiff has availed himself of all administrative remedies and now has exhausted said administrative remedies set forth by the California law and as required by 42 U.S.C. Section 1997e.

**FIRST CAUSE OF ACTION-FEDERAL CIVIL RIGHTS VIOLATIONS (42 U.S.C. 1983) (All Defendants)**

31. The Plaintiff incorporates by reference each and every allegation of Paragraphs 1-30 as though set forth herein.

32. This is a cause of action for deprivation of constitutional rights under color of state law brought pursuant to the recodification of section 1979 of the Civil Rights Act of 1871, Title 42 U.S.C. §1983, for remedies for Defendants' deprivation of Plaintiff's civil rights. Plaintiff alleges that Defendants, each and all of them, have deprived Plaintiff's, a convicted inmate, of his civil rights by failing to provide him with the standards and conditions of incarceration as mandated by the Eighth Amendment to the Constitution of the United States of America; to wit, failing to provide him with medical care for a known serious medical need.

33. Plaintiff is informed and believes and thereon alleges that Defendants and each of them were public employees of the State of California Department of Corrections and Rehabilitation and as such were functioning as administrative, custodial and health care staff within the California State Prison, Corcoran. Said staff had the responsibility to monitor and supervise prisoners, and inmates, to ensure their emotional and physical welfare and summon medical treatment when they became aware that medical and or mental health treatment was required.

34. The Defendants also had the legal responsibility to carry out said systems of care, monitoring and administration so that medical care could be provided for persons with serious medical needs.

35. The Defendants also had the responsibility under Plata v Schwarznegger (9th Cir. 2010) 754 F.3d 1088, Title 15 of the California Code of Regulations and minimum constitutional standards to ensure the health, welfare and safety of all inmates in California State Prison-Corcoran.

36. At all times hereinafter mentioned, Defendants and each of them were acting as the agents and/or employees of the California Department of Corrections and Rehabilitation and in doing all of the things aforementioned were acting under color of their authority as such, and under color of the statutes, ordinances, regulations, customs and usages of the California Department of Corrections and Rehabilitation.

37. From November, 2018 through July, 2019, the Plaintiff was deprived of his constitutional rights under the Eighth Amendment to be free from cruel and unusual punishment. Plaintiff had a serious medical need; he suffered from a neurological malady which if not addressed and treated, could have catastrophic consequences. From the standpoint of the administration of CSP-COR, Defendants Ward and Bell created, maintained and promoted a system of rendition of medical care where the primary healthcare providers would be nursing and other ancillary healthcare staff who neither had the expertise nor the knowledge to diagnose and provide treatment of patients. There was a further administrative mandate set forth by custom and practice that said nursing and ancillary staff would act so as to delay treatment for inmates with serious medical needs and provide inadequate means of said prisoners consulting with medical doctors and specialists. There was a systemic failure to implement systems of provision of

medical care when promptly required; rather, delays were endemic, resulting in an over four month delay in the case of Plaintiff. There was also a systemic defect in the provision of medical care as inmates, such as Plaintiff, after having undergone surgery in out of prison medical facilities would be transferred back to the prison where the medical and nursing staff because of a lack of training and experience could not properly identify and address the specific needs of the patient.

38. In the case of Plaintiff, the Defendants and each of them knew that Plaintiff had a serious medical need. Each and all of the individual Defendant health care providers knew that Plaintiff had a neurological condition and knew that over the period of time his symptoms were getting worse. Further they knew that his symptoms were neurologically related such that they were aware that Plaintiff had a serious medical need. Regardless of that fact, they delayed Plaintiff's treatment, failed to refer him to competent medical providers for surgery and thereafter failed to provide adequate post surgical treatment, all resulting in catastrophic injuries.

39. The failure of Defendants to maintain systems of the provision of medical care to inmates at CSP-COR that met with legal and constitutional standards and supervise and protect the Plaintiff as a convicted prisoner under the minimum standards as required by the United States Constitution amounted to cruel and unusual punishment in violation of the Eighth Amendment.

40. The Defendants and each of them, acted with deliberate indifference which knowingly subjected the Plaintiff's Decedent to acts and injuries that constituted cruel and unusual punishment and deprivation of life and liberty, all in violation of the Plaintiff's Decedent's rights guaranteed by the Eighth Amendment to the United States Constitution.

41. By this action, Plaintiff seeks all legal and equitable relief to which he

may be entitled, including but not limited to compensatory and punitive damages, attorneys fees and costs and prejudgment interest against Defendants and each of them.

42. By reason of the Defendants' conduct, Plaintiff was deprived of rights, privileges and immunities secured to him by the Constitution of the United States and the laws thereunder in that failure to provide constitutionally minimal standards of medical care when it was known that said the lack of medical services would in all likelihood deprive the Plaintiff of life and liberty without due process that is guaranteed under the Eighth Amendment to the United States Constitution.

43. As a result of the Defendants' actions against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff has sustained general and special damages, all in amounts according to proof at the time of trial

44. The above recited actions of Defendants in depriving Plaintiff's of his constitutionally protected rights were done with evil motive or intent, or with reckless, callous and deliberate indifference to cause Plaintiff unnecessary and wanton infliction of pain.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as follows:

1. For special damages according to proof;
2. For general damages according to proof;
3. For Punitive Damages as to the individual defendants in an amount appropriate to punish Defendants for their wrongful conduct and set an example for others;
4. For reasonable attorney fees pursuant to Title 42 U.S.C. Section 1988;

5. For such other and further relief as the Court may deem just and proper.

Dated: 4/9/2021            LAW OFFICES OF GREG W. GARROTTO

/s/ Greg W. Garrotto

GREG W. GARROTTO

**REQUEST FOR JURY TRIAL**

Plaintiff hereby requests a jury trial pursuant to Federal Rule of Civil Procedure 38.

Dated: 4/9/2021        LAW OFFICES OF GREG W. GARROTTO

/s/Greg W. Garrotto
GREG W. GARROTTO

14        COMPLAINT FOR DAMAGES