UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY FREEMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KEN CLARK, et al.,<br><br>　　　　Defendants. | Case No.: 1:21-cv-0611 NONE JLT (PC)<br><br>ORDER VACATING THE HEARING DATE OF JULY 21, 2021<br><br>FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANT'S MOTION TO DISMISS<br>(Doc. 7) |

Leroy Freeman was incarcerated at California State Prison- Corcoran when he was diagnosed with a condition that required surgical intervention. Plaintiff asserts that following the surgery, he did not receive proper care at CSP-Corcoran, which resulted in permanent paralysis. Plaintiff seeks to hold Warden Ken Clark; Celia Bell, the CEO of Health Care at CSP-Corcoran; and unidentified medical providers liable for violations of his civil rights arising under the Eighth Amendment. (*See* Doc. 1.)

Defendants seek dismissal of the complaint pursuant to Rule 12(b)(f) of the Federal Rules of Civil Procedure, asserting that Plaintiff's claims against Clark and Bell are barred by the Eleventh Amendment because they are being sued in their official capacities. In addition, Defendants assert the factual allegations are insufficient to state a claim. (Doc. 7-1.) Plaintiff opposes the motion, asserting his claims are not barred because they may be stated against the defendants in their personal capacity, and the facts alleged support his claims. (Doc. 12.)

The Court finds the matter is suitable for decision without oral arguments. Therefore, the

motion is taken under submission pursuant to Local Rule 230(g) and the hearing date of July 21, 2021 is **VACATED**. For the reasons set forth below, the Court recommends the motion to dismiss be **GRANTED**.

## I. Background and Plaintiff's Allegations

In 2018, Plaintiff was a convicted prisoner and incarcerated at CSP-Corcoran. (Doc. 1 at 2, ¶ 2.) He reports at all relevant times, Ken Clark was the Warden of CSP-Corcoran and Celia Bell was the CEO of Health Care for the prison. (*Id.*, ¶¶ 3-4.)

On November 20, 2018, Plaintiff complained of "left arm pain and numbness that radiated to his neck and back," and reported his symptoms through "appropriate channels to prison custodial staff." (Doc. 1 at 3, ¶ 10.) Plaintiff reports he was seen by Olivia Borbolla R.N., who directed him to be seen by a physician. (*Id.*) On November 21, Plaintiff was seen by a physician identified as "Doe 1," who referred Plaintiff to a neurosurgeon "[a]s a result of an assessment and review of [an] MRI diagnostic test." (*Id.*, ¶ 11.)

Between November 21, 2018 and January 11, 2019, Plaintiff "underwent diagnostic tests and examinations to both his cervical and lumbar spines." (Doc. 1 at 3-4, ¶ 12.) According to Plaintiff, this testing "revealed serious progressive medical conditions which were life and health threatening and which needed immediate attention." (*Id.* at 4, ¶ 12.) Specifically, Plaintiff reports he was diagnosed with "degenerative changes and central canal narrowing at the lumbar spine L3-4 and L4-5 levels and moderate neural foraminal narrowing bilaterally at the lumbar spine L4-5 and L5 and S-1. (*Id.*) During this time, Plaintiff told "Doe 1" he felt "weakness down his legs" and an increase in "his numbness and tingling in his left arm and neck pain." (*Id.*, ¶ 13.)

Plaintiff asserts that he "was not examined or assessed in person by a neurosurgeon," though he "had severe neurological symptoms which were progressing and were symptomatic of probable severely debilitating progressive disorders." (Doc. 1 at 4, ¶ 15.) Plaintiff reports he "was seen by 'telemedicine' where he talked to a neurosurgeon by way of video connection on two occasions, on January 11, 2019 and February 1, 2019." (*Id.*) Plaintiff alleges that the "neurosurgeon advised 'prompt' surgical intervention for cervical spine surgery consisting of a posterior cervical fusion and foraminotomy and a nerve root block." (*Id.*) Plaintiff contends "further medical care was neither

prompt or forthcoming in a timely manner." (*Id.* at 4-5, ¶ 16.)

Plaintiff alleges his physician "Doe 1," "did not expedite the request for referral to a neurosurgeon for surgery." (Doc. 1 at 5, ¶ 16.) Plaintiff asserts that "Doe 1" instead placed an order "for 'routine' neurosurgery resulting in an acceptable delay of treatment." (*Id.*) He contends the routine order resulted in his surgery not being scheduled for four months, while his symptoms worsened. (*Id.*, ¶ 17.) Plaintiff was transported to Sierra Vista Regional Medical Center in San Luis Obispo for surgery on June 12, 2019. (*Id.*)

Dr. Donald A. Ramberg, a neurosurgeon, "performed a cervical spine surgery consisting of a posterior cervical laminectomy and fusion at the C4 through C7 levels." (Doc. 1 at 6, ¶ 19.) Plaintiff was discharged from Sierra Vista Regional Medical Center on June 14, 2019, and "was returned to CSP- Corcoran." (*Id.*) Plaintiff asserts he "was transported… not by ambulance but by automobile with no accommodations." (*Id.*, ¶ 20.) He contends there were no precautions for his "post surgical condition, health and welfare" during the transport. (*Id.*)

Plaintiff reports that upon his return to CSP-Corcoran, "he was not placed in a medical ward or unit as a post surgical patient." (Doc. 1 at 6, ¶ 21.) Plaintiff asserts that instead, he was returned to "his cell with no supportive medical and or nursing care." (*Id.*) According to Plaintiff, it was only after he protested that he "was placed in a medical unit with nursing and other ancillary health staff." (*Id.*) However, he alleges the health staff "did not have the knowledge or experience to provide appropriate care for Plaintiff." (*Id.*) Thus, Plaintiff contends he "received care that was tantamount to no care during this period of time." (*Id.*)

Plaintiff alleges he "reported pain and numbness to a registered nurse" on June 18, 2019. (Doc. 1 at 7, ¶ 23.) He contends this resulted in an unidentified "primary care provider assessing Plaintiff and making a referral of Plaintiff back to Dr. Ramberg." (*Id.*) He asserts that after a consultation with the Chief Physician and Surgeon of CSP-Corcoran, "Plaintiff was referred to Kaweah Delta Medical Center in Visalia, California where he was found to have central cord syndrome secondary contusion and edema." (*Id.*) Plaintiff reports that "as a result…[,] he is and remains permanently paralyzed and a quadriplegic." (*Id.*)

According to Plaintiff, he "is a victim of medical care that has failed to meet Eighth

3

Amendment mandates." (Doc. 1 at 7, ¶ 25.) Plaintiff contends defendants Warden Clark and Bell were obligated "under State, Federal and constitutional mandates to maintain the prison according to law so that it would comply with Eighth Amendment requirements." (*Id.* at 3, ¶ 8.) Plaintiff alleges:

> The Defendants and each of them were and are under a legal obligation pursuant to Plata v[.] Schwarznegger (9th Cir. 2010) 754 F.3d 1088 to provide medical care that complies with Eighth Amendment mandates. In part this required said Defendants to oversee the provision of healthcare at CSP-COR and ensure that it would provide adequate healthcare to those inmates with serious medical needs. Said Defendants knew that prisoners incarcerated in said prison would be totally dependent on Defendants for the provision of medical care, and that without the Defendants acting according to law and or statute; to wit, inmates such as Plaintiff would not be able to receive prompt and appropriate medical care.

(*Id.*) In addition, Plaintiff contends Warden Clark and Bell "had a responsibility to monitor those inmates and prisoners who were sick or ill in order to determine whether said inmates had serious medical needs to which response was required." (*Id.*, ¶ 9.)

Plaintiff contends he received "medical care by persons who were known by the Defendants to have insufficient competence to evaluate, diagnose and care for serious neurological conditions which if left untreated, would lead to permanent debilitating results." (Doc. 1 at 7, ¶ 25.) He asserts "systems that were put in place by Defendants resulted in substandard care." (*Id.*) Plaintiff contends this was "exhibited by the fact that when exhibiting signs and symptoms of a serious neurological/spinal disorder which were confirmed by diagnostic test result, the Plaintiff was seen not in person by a specialist but by video conference or 'telemedicine'." (*Id.*) According to Plaintiff, telemedicine is "known to be insufficient to provide care and treatment which met with the applicable standard of practice." (*Id.*) In addition, Plaintiff asserts the CSP-Corcoran system "as designed, implemented and carried out by Defendants caused and causes unnecessary delays which detrimentally affect the medical condition of inmates with serious medical needs." (*Id.*, ¶ 26.) Finally, Plaintiff alleges the prison's systems caused "an inability to provide appropriate post surgical treatment." (*Id.*) Plaintiff maintains, "Defendants who were charged with creating, designing and administering said medical care knew that as carried out, it would cause harm to prisoners with serious medical needs who required prompt medical attention." (*Id.*)

Furthermore, Plaintiff contends the defendants did not make any "inquiry… to determine the competency of Dr. Ramberg." (Doc. 1 at 5, ¶ 18.) He asserts that if the defendants "made a cursory

investigation" into the qualifications of Dr. Ramberg, "they would have determined that Dr. Ramberg was incompetent and unqualified to perform cervical spine surgery on Plaintiff" because records from the state court and California Medical Board "would have revealed that Dr. Ramberg was a defendant in at least two medical malpractice actions where substantial judgments had been returned and or settlements entered against Dr. Ramberg." (*Id.*) He also asserts such an investigation would have revealed that Dr. Ramberg was under investigation with the California State Medical Board the California State Medical Board for his competency as a neurosurgeon; an investigation that in fact resulted in an Accusation being filed by the California Attorney General Office on behalf of the Medical Board of California, Department of Consumer Affairs to revoke his medical license (Accusation No. 800-2018- 3 049179)." (*Id.* at 5-6, ¶ 18.)

Based upon the foregoing, Plaintiff seeks to hold Warden Clark; Celia Bell, the CEO of Health Care at CSP-Corcoran; and healthcare workers identified only as "Does 1-10" liable for a violation of his civil rights under the Eighth Amendment under 42 U.S.C. § 1983. (Doc. 1 at 9.) In addition, the caption of the complaint indicates Clark is being sued "in his official capacity as Warden" and Bell is being sued "in her official capacity as Health Care CEO." (*Id.* at 1.)

### III.      Legal Standards for a Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5

alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

Allegations of a complaint must be accepted as true when the Court considers a motion to dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976). A court must construe the pleading in the light most favorable to the plaintiff and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent that the pleadings can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV.    Section 1983 Claims

An individual may bring an action for the deprivation of civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state

law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). Thus, Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff." *Chavira v. Ruth*, 2012 WL 1328636 at *2 (E.D. Cal. Apr. 17, 2012). An individual deprives another of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## V.     Discussion and Analysis

Defendants Clark and Bell assert they are immune from suite under the Eleventh Amendment and seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 7-1 at 5.) In addition, to the extent Plaintiff intended to state a claim against them in their individual capacities, Defendants contend the facts alleged fail to show they violated Plaintiff's Eighth Amendment rights. (*Id.* at 5-8.)

### A.     "Official capacities" and Section 1983

In the caption of the complaint, Plaintiff indicates that Clark is sued "in his official capacity as Warden at California State Prison- Corcoran. (Doc. 1 at 1.) In addition, Plaintiff stated Bell was sued "in her official capacity as Health Care CEO at California State Prison-Corcoran." (*Id.*) Further, Plaintiff seeks only monetary damages, rather than injunctive or declaratory relief. (*Id.* at 11.) Defendants contend that because they are sued in their official capacity, the Court should "dismiss them from the action." (Doc. 7-1 at 5.)

Generally, a state or state official sued in his or her official capacity are not "persons" under 42 U.S.C. § 1983. *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007). The Eleventh Amendment serves as a jurisdictional bar to suits brought by private parties against a state or state agency, unless the state consents to the suit. *See Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999) ("In the absence of a waiver by the state . . . under the [E]leventh [A]mendment, agencies of the state are immune from private damage actions.") (internal quotations omitted). Similarly, suing a state official

in his or her official capacity is analogous to suing the state itself. *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "Therefore, state officials sued in their official capacities… [are] generally entitled to Eleventh Amendment immunity." *Id.* at 825.

Plaintiff acknowledges that "the caption of the Complaint names Defendant Clark 'in his official capacity as Warden at California State Prison- Corcoran' and Defendant Bell 'in her official capacity as Health Care CEO of California State Prison- Corcoran.'" (Doc. 12 at 4.) Because suits against Clark and Bell are tantamount to suing the state of California, his claims for monetary damages are barred by the Eleventh Amendment. *See Flint*, 488 F.3d at 825; *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The Eleventh Amendment bars suits for money damages in federal court against … state officials acting in their official capacities"); *Huckabee v. Medical Staff at CSATF*, 2013 WL 4496552 at *6 (E.D. Cal. Aug. 20, 2013) (finding the plaintiff could not pursue claims for damages against a prison warden in his official capacity, as the claims were barred under the Eleventh Amendment). Consequently, the Court recommends the motion to dismiss the claims brought against Clark and Bell be granted.

**B.    Claim for violation of the Eighth Amendment**

Plaintiff contends the fact that he stated his claims were raised against Clark and Bell in their official capacities in the caption "does not settle the matter of whether these Defendants were acting in their 'personal' or 'official' capacity…" (Doc. 12 at 4.) Although contrary to the caption of the complaint, Plaintiff now argues that "Defendants are not being sued in the capacity as representatives of the state; rather they are being sued for their individual responsibility for the injuries occasioned on Plaintiff." (*Id.* at 9.)

1.    Eight Amendment and the right to medical care

The Eighth Amendment protects inmates from inhumane methods of punishment and conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). As individuals in custody must rely upon officials for medical care, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain … proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), (internal

8

citation, quotation marks omitted). To state a cognizable claim for inadequate medical care under the Eighth Amendment, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.*, 429 U.S. at 106. Thus, the Ninth Circuit explained: "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

### 2.   Serious medical need

A serious medical need exists "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (quoting *Estelle*, 429 U.S. at 104). Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990).

The Court finds the allegations sufficient to establish that Plaintiff had a serious medical need, particularly because surgery was recommended and performed on his cervical spine.

### 3.   Deliberate indifference

If a plaintiff establishes the existence of a serious medical need, he must then show that officials responded to that need with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). In clarifying the culpability required for "deliberate indifference," the Supreme Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw that inference.

*Farmer*, 511 U.S. at 837. Therefore, a defendant must be "subjectively aware that serious harm is likely

to result from a failure to provide medical care." *Gibson*, 290 F.3d at 1193 (emphasis omitted). When a defendant should have been aware of the risk of substantial harm but, indeed, was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." *Id.* at 1188.

Where deliberate indifference relates to medical care, "[t]he requirement of deliberate indifference is less stringent . . . than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns." *Holliday v. Naku*, 2009 U.S. Dist. LEXIS 55757, at *12 (E.D. Cal. June 26, 2009) (citing *McGuckin*, 974 F.2d at 1060). Generally, deliberate indifference to serious medical needs may be manifested in two ways: "when prison officials deny, delay, or intentionally interfere with medical treatment, or … by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988). A claimant seeking to establish deliberate indifference must show "both (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need *and* (b) harm caused by the indifference." *Conn v. City of Reno*, 592 F.3d 1081 (9th Cir. 2010) (emphasis added).

Importantly, here, Plaintiff has not alleged any facts supporting a conclusion that Clark and Bell were aware of his medical condition. Likewise, Plaintiff does not allege that Clark and Bell directed any of the medical testing conducted between November 2018 and January 2019, or the order made by Doe 1 for "routine" surgery. Although Plaintiff contends the policy he attributes to the defendants required him to have a "telemedicine" consultation with the neurosurgeon, Plaintiff fails to allege any specific harm that resulted from the use of a video conference. The facts alleged are insufficient to show Clark and Bell knew of Plaintiff's serious medical need; acted in a manner that delayed, or interfered with, his treatment; and that a harm resulted from their actions. Therefore, to the extent Plaintiff seeks to hold Clark and Bell liable in their individual capacities, Court recommends the claim for an Eight Amendment violation be dismissed.

### 4. Supervisor liability

Under Section 1983, Plaintiff must allege that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The facts alleged must be sufficient for the Court to conclude that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. *Iqbal*, 556 U.S. at 1948-49. Liability may not be imposed on

10

supervisory personnel under Section 1983 on the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct.  *Id*.; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).

Thus, Plaintiff is unable to hold Clark and Bell liable for the actions of others at the prison based upon the doctrine of *respondeat superior*.  Instead, Plaintiff must allege facts sufficient to determine that Clark and Bell "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca,* 633 F.3d 1191, 1209 (9th Cir. 2011); *see also Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996) (finding a warden was not liable under Section 1983, because the warden was not directly involved in procurement of medical care); *Brown v. Perez*, 2016 WL 7975264 at *6 (C.D. Cal. Dec. 16, 2016) ("contentions [that] rely upon claims of the general responsibility of the warden for prison operations that are insufficient to establish Section 1983 liability").  Because Plaintiff has offered no facts indicating the Warden of CSP-Corcoran and the CEO Health Care were directly involved in his medical care, the facts alleged are insufficient to support his claim for an Eighth Amendment violation against Clark and Bell.

## VI.     Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Plaintiff requests that if dismissal is granted, then leave to amend be granted.  (Doc. 12 at 9.)  Due to the sparsity of allegations in the complaint related to the knowledge and actions that may be

attributed to Clark and Bell, the Court has insufficient information to conclude that amendment is futile. Plaintiff may be able to allege additional facts that support his claims. Further, it does not appear that allowing amendment would cause undue delay at this juncture, and there is no evidence Plaintiff has acted in bad faith. Thus, the Court recommends leave to amend be granted.

### VII.     Findings and Recommendations

Based upon the foregoing, the Court **RECOMMENDS**:  the motion to dismiss (Doc. 7) be **GRANTED** as follows:

1. The claims against Clark and Bell in their official capacities be **DISMISSED without leave** to amend;
2. The claims against Clark and Bell in their individual capacities be **DISMISSED with leave** to amend; and
3. Plaintiff be directed to file any amended complaint within thirty days of any order adopting these recommendations.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:     **July 19, 2021**                         _ /s/ Jennifer L. Thurston
                                                                  CHIEF UNITED STATES MAGISTRATE JUDGE