UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY FREEMAN,<br><br>            Plaintiff,<br><br>     v.<br><br>KEN CLARK, et al.,<br><br>            Defendants. | Case No. 1:21-cv-00611-JLT-BAK (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS CLARK AND BELL'S MOTION TO DISMISS BE GRANTED<br><br>(ECF No. 20)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

## I. INTRODUCTION

Leroy Freeman ("Plaintiff") is proceeding through counsel in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on April 12, 2021. (ECF No. 1).[1] Plaintiff was incarcerated at California State Prison, Corcoran ("Corcoran"), when he was diagnosed with a condition that required surgical intervention. Plaintiff asserted that following the surgery, he did not receive proper care at Corcoran, which resulted in permanent paralysis. Plaintiff sought to hold Ken Clark, the Warden at Corcoran; Celia Bell, the CEO of Health Care at Corcoran; and unidentified medical providers liable for violations of his civil rights arising under the Eighth Amendment.

On June 21, 2021, defendants Clark and Bell filed a motion to dismiss. (ECF No. 7).

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

1  The motion was granted.  (ECF Nos. 14 & 15).  The claims brought against defendants Clark
2  and Bell in their official capacities were dismissed without leave to amend as barred by the
3  Eleventh Amendment, and the claims brought against them in their individual capacities were
4  dismissed with leave to amend for failure to state a claim.  (Id.).

5  On October 13, 2021, Plaintiff filed his First Amended Complaint.  (ECF No. 16).  On
6  October 25, 2021, defendants Clark and Bell ("Defendants")[2] filed another motion to dismiss.
7  (ECF No. 20).  On November 9, 2021, Plaintiff filed his opposition.  (ECF No. 26).  On
8  November 16, 2021, Defendants filed their reply.  (ECF No. 27).

9  Defendants' second motion to dismiss is now before the Court.  For the reasons that
10  follow, the Court will recommend that Defendants' motion to dismiss be granted.

11  **II.    SUMMARY OF PLAINTIFF'S COMPLAINT**

12  Plaintiff alleges as follows in his First Amended Complaint:

13  During the relevant time, Plaintiff was a convicted prisoner held in the custody of the
14  California Department of Corrections and Rehabilitation ("CDCR").  Defendant Clark was the
15  Warden at Corcoran and defendant Bell was the CEO of Health Care at Corcoran.

16  On or around November 20, 2018, Plaintiff complained of "left arm pain and numbness
17  that radiated to his neck and back," and reported his symptoms through "appropriate channels
18  to prison custodial staff."  (ECF No. 16, p. 7).  Plaintiff was seen by a registered nurse, "who
19  by education, training and state licensure could not assess, screen, examine or diagnose patients
20  with neurological and or orthopaedic [sic] issues."  (Id.).  The nurse sent Plaintiff to be seen by
21  his Primary Care Provider ("PCP").  (Id.).

22  On November 21, 2018, Plaintiff was seen by his PCP, who referred Plaintiff to a
23  neurosurgeon after reviewing an MRI.  (Id.).

24  Between November 21, 2018, and January 11, 2019, "Plaintiff underwent diagnostic
25  tests and examinations to both his cervical and lumbar spines which revealed serious

---

[2] In the First Amended Complaint, Plaintiff lists numerous other defendants who are allegedly responsible for violating Plaintiff's rights.  (ECF No. 16, pgs. 2-3).  However, the only defendants who have moved to dismiss are defendants Clark and Bell.

2

progressive medical conditions which were life and health threatening and which needed immediate attention." (Id.). Plaintiff was diagnosed with "degenerative changes and central canal narrowing at the lumbar spine L3-4 and L4-5 levels and moderate neural foraminal narrowing bilaterally at the lumbar spine L4-5 and L5 and S-1." (Id. at 7-8).

On December 26, 2018, Plaintiff was seen by his PCP. (Id. at 8). Plaintiff "reported that his numbness and tingling in his left arm and neck pain had increased. The Plaintiff also reported at that time that he had begun to experience weakness down his legs." (Id.). Plaintiff was referred for an MRI of his cervical spine. (Id.).

On January 7, 2019, Plaintiff underwent an MRI. (Id.). The MRI corroborated Plaintiff's complaints. (Id.).

Plaintiff "was not examined or assessed in person by a neurosurgeon," though he "had severe neurological symptoms which were progressing and were symptomatic of probable severely debilitating progressive disorders." (Id.). Instead, Plaintiff "was seen by 'telemedicine' where he talked to a neurosurgeon by way of video connection on two occasions, on January 11, 2019 and February 1, 2019." (Id.). The "neurosurgeon advised 'prompt' surgical intervention for cervical spine surgery consisting of a posterior cervical fusion and foraminotomy and a nerve root block." (Id.)

However, "further medical care was neither prompt [n]or forthcoming in a timely manner. There was a failure on the part of the Defendants including but not limited to Defendants McCabe and Bell by way of appropriate procedures and protocols to ensure that medical orders requiring exigent medical intervention be ordered and carried out. Rather in this instance, Plaintiff's primary care physician, did not expedite the request for referral to a neurosurgeon for surgery. Said Defendant instead placed orders for 'routine' neurosurgery resulting in an unacceptable delay of treatment." (Id. at 8-9). Plaintiff was not transported for surgery until June 12, 2019. (Id. at 9). Plaintiff's symptoms became worse during the wait for surgery. (Id.).

"Defendants Ward, Bell, McCabe and or their surrogates organized and made all the decisions with regard to whom the Plaintiff would be referred to for the purpose of performing

3

the cervical spine surgery."[3] (Id.). They referred Plaintiff to Donald Ramberg, a neurosurgeon. (Id.). "There was no inquiry by Defendants to determine the competency of Dr. Ramberg. If the Defendants had made a cursory investigation of Dr. Ramberg's qualifications, they would have determined that Dr. Ramberg was incompetent and unqualified to perform cervical spine surgery on Plaintiff." (Id.).

Dr. Ramberg "performed a cervical spine surgery consisting of a posterior cervical laminectomy and fusion at the C4 through C7 levels." (Id. at 10). After the surgery, Plaintiff was returned to Corcoran by automobile. (Id.). There were no accommodations for Plaintiff, even though he just had surgery. (Id.). Defendants "Ward, Bell and McCabe as well as those persons transporting the Plaintiff, Does 9-10 were aware that Plaintiff would [] probably [be] injured." (Id.).

After returning, Plaintiff was admitted to the Correctional Treatment Center ("CTC"). (Id.). "Plaintiff reported that he was unable to ambulate, had poor balance and significant neck pain." (Id.). While Plaintiff was seen by a nurse practitioner, he was never seen by a medical doctor during his admission to CTC (Plaintiff was admitted at the CTC from June 14, 2019, to June 18, 2019). (Id.). Plaintiff repeated his complaints to defendants Williams, Necar, Autrey, and Bencito, and they were reported in his medical chart, but they were ignored by Defendants. (Id.).

Defendants Williams, Nacar, Autrey, and Bencito all failed to report to any medical doctor "the fact that Plaintiff had abnormal laboratory results and vital signs which would have given indication to the Defendant Aye and or any other medical doctor that the Plaintiff was bleeding and creating a hematoma at the surgical incision site." (Id. at 10-11). Plaintiff's "signs and symptoms would have alerted the Defendant doctors to a known risk of the cervical spine surgery, a hematoma which could cause cord compression." (Id. at 11).

"From the date of admission to the CTC to June 18, 2019, the Defendants and each of them were aware of the abnormal signs and symptoms exhibited by Plaintiff which indicated

---

[3] Plaintiff refers to defendant Ward here and in numerous other paragraphs in his First Amended Complaint. However, Ward is not listed as a defendant in this case. (ECF No. 16, pgs. 2-3).

4

that Plaintiff was having a complication from his surgery yet they did not act on them, causing an unscionable delay." (Id.).

At 7:40 a.m. on June 18, 2019, Plaintiff told defendant Williams that he was experiencing severe pain that was affecting his left shoulder and leg. (Id.). "Defendant Aye was notified yet he did not come to see, examine or attend to Plaintiff.  At or about this time, the Plaintiff also began to complain of pain and no feeling.  Regardless of Plaintiff's statements, Defendant Williams disbelieved Plaintiff and it was not until 1:34 p.m. that he was transferred to a facility with a higher level of medical care." (Id.).

Plaintiff was transferred to Kaweah Delta Medical Center and "was diagnosed with a central cord syndrome which was secondary to a spinal cord contusion caused by a hematoma. The signs and symptoms of this known complication of cervical spine surgery were known to all of the Defendants and had it been addressed in a timely fashion, Plaintiff would not have suffered quadriplegia." (Id.).

"All of the Defendants knew that Plaintiff had a serious medical need based on his presentation, complaints and laboratory results and that a failure to address the evolving symptoms would result in catastrophe which in fact occurred." (Id. at 12).

"The Defendants and each of them failed to have appropriate systems in place to provide treatment for post surgical patients who were at risk for complications if appropriate post surgical care was not provided.  Defendants Ward, Bell and McCabe further knew that there was a lack of supervision of the medical doctors to ensure that they personally would round on patients; they further knew that should a patient [] require a transfer to a higher level of care because of emergent circumstances, there would be delays caused by institutional inadequacies that would cause additional harm." (Id.).

"There was a failure on the part of Defendants to have trained medical and or nursing staff that could recognize abnormal signs and symptoms and ensure that they were reported to medical staff who could appropriate address the condition, and could provide the required immediate diagnosis and care." (Id.).

"The system of the provision of medical care at CSP-COR as designed, implemented

and carried out by Defendants Ward, Bell and McCabe also was known to be insufficient to provide adequate aftercare for patients recovering from surgery in that the staff was insufficiently trained and experienced to monitor and care for patients which was known to probably result in complications and detrimental health results." (Id. at 13-14).

"Defendants Ward, Bell and McCabe created, maintained and promoted a system of rendition of medical care that institutionally failed to meet constitutional mandates; a fact known to them as early as 2013. The system of care which was promoted at CSP-COR resulted in delays as well as failures to provide appropriate treatment." (Id. at 16).

Plaintiff also includes allegations regarding the responsibilities of defendants Bell and Clark. According to Plaintiff,

> Defendants Clark and Bell had the obligation under State, Federal and constitutional mandates to maintain the prison according to law so that it would comply with Eighth Amendment requirements. The Defendants and each of them were and are under a legal obligation pursuant to Plata v Schwarznegger (9th Cir. 2010) 754 F.3d [sic] 1088 to provide medical care that complies with Eighth Amendment mandates. In part this required said Defendants to oversee the provision of healthcare at CSP-COR and ensure that it would provide adequate healthcare to those inmates with serious medical needs. Said Defendants knew that prisoners incarcerated in said prison would be totally dependent on Defendants for the provision of medical care, and that without the Defendants acting according to law and or statute; to wit, inmates such as Plaintiff would not be able to receive prompt and appropriate medical care.

(Id. at 4).

Additionally,

> Defendant Bell was charged with planning, organizing, and directing the medical, psychiatric, dental and clinical services in the care and treatment of individuals at CSP-COR. The duties of Defendant Bell included but was not limited to planning and assigning work; passing upon difficult medical problems in directing the staff engaged in treating and caring for ward or inmate patients; assigning cases to physicians; directing the transfer of patients between institutions and outside facilities; supervising post-operative care of patients; directing the clinical and pathological work and ordering examinations and analyses; and outlining instructions for nurses and attendants in the care of patients.

(Id.).

"Said Defendants further had a responsibility to monitor those inmates and prisoners

6

who were sick or ill in order to determine whether said inmates had serious medical needs to which response was required." (Id. at 5).

"Defendants Ward, Bell and Conall were all at times aware that CSP-COR was not providing adequate medical care to inmate-patients such as Plaintiff and that there were systemic issues that presented an on-going serious risk of harm to patients and resulted in preventable morbidity and mortality." (Id. at 6).

Moreover, these defendants were aware that, in 2013, the Plata court had medical experts visit Corcoran to evaluate health care services. (Id.). "As a result of said visit, said medical experts prepared the Corcoran State Prison Health Care Evaluation dated July 29, 2013. Said experts stated: 'At Corcoran, we found serious problems related to access, timeliness, and quality of care. Clinical systems that we found to be deficient included the intrasystem transfer process, nursing sick call, chronic disease management, urgent/emergent care, speciality [sic] services, and medication administration. The lack of a fully engaged management team and the absence of effective clinical supervision of the physicians are major factors contributing to these problems.'" (Id.).

These defendants were also aware that before, during, and after the incidents alleged in the complaint, "the California Office of the Inspector General ('OIG') was both periodically inspecting, reviewing and rating the state of medical care provided at CSP-COR and drafting and distributing 'Medical Inspection Reports.' Consistently through out [sic] the period of time in question, the overall quality of medical care at CSP-COR was rated as being 'Inadequate'." (Id. at 6-7).

"Defendants Ward, Bell and McCabe had direct responsibility for the lapses of care that were identified both by Office of the Inspector General of the State of California as well as the Plata Medical Experts." (Id. at 15). However, they failed to improve the conditions of health care administration. (Id.).

### III. MOTION TO DISMISS

a. Defendants' Motion

On October 25, 2021, defendants Clark and Bell filed a motion to dismiss the claims

against them, with prejudice. (ECF No. 20). Defendants argue that the "allegations against them are general and conclusory, and provide no specific facts demonstrating how Clark and Bell were deliberately indifferent to Plaintiff's serious medical needs." (ECF No. 20-1, p. 1).

"While Plaintiff asserts, generally, that Warden Clark and CEO Bell were responsible for the systemic failure to provide adequate medical care to patients at CSP - Corcoran, the FAC—like the original Complaint—contains no specifics regarding how any particular policy or procedure implemented by them resulted in Plaintiff's harm." (Id. at 7). Additionally, there are no facts alleged demonstrating that Plaintiff's injury was the result [of] defendant Clark's or defendant Bell's deliberate indifference. (Id.). "That they might oversee the prison and/or its medical system generally does not impute liability to them under the Eighth Amendment." (Id.).

Defendants ask the Court to dismiss the claims with prejudice because Plaintiff failed to state a claim against them after two attempts. (Id.).

  b. Plaintiff's Opposition

Plaintiff filed his opposition on November 9, 2021. (ECF No. 26). Plaintiff argues that he sues Defendants because they were responsible for "for organizing and overseeing the structure of medical care at [Corcoran]." (Id. at 2).

"Defendant Clark had chief administrative responsibility for the operation of CSP-COR including but not limited to those services charged with providing health care to inmates." (Id. at 2).

Defendant Bell's responsibilities "indicate a close 'hands on' function in the provision of medical care at said facility. Included in her responsibilities are some of the tasks that are directly at issue in this case, i.e., passing on 'difficult medical problems', directing the staff engaged in treating and caring for ward or inmate patients; directing the transfer of patients between institutions and outside facilities; and[] supervising post-operative care of patients." (Id.) (citation omitted).

Thus, Defendants "had personal responsibility for the functioning of medical care at the facility." (Id.). Additionally, they were aware that both California and the Plata court found

1  deficiencies in the care that was being provided at Corcoran.  (Id. at 2-3).  And, these
2  deficiencies contributed to Plaintiff's injury.  (Id. at 3).  "Defendant doctors failed to round on
3  Plaintiff or failed to monitor his post surgical recovery.  Nursing failed to report abnormalities.
4  There were direct institutional failures that resulted in the failure of Plaintiff's care.  The
5  systems of care were to be directly supervised and managed by Defendants Clark and Bell."
6  (Id.).

7        Finally, defendant Bell had responsibilities regarding the transfer of patients to outside
8  health care providers, and a "significant issue in the case is the transfer of the Plaintiff to a
9  hospital and a surgeon who was known to have significant issues with regard to professional
10 competence."  (Id.).

11       Plaintiff further argues that he did include factual allegations showing that Defendants
12 are responsible for setting policies and that the policies they set are deficient.  (Id.).

13       c.   Defendants' Reply

14       Defendants filed their reply on November 16, 2021.  (ECF No. 27).  In their reply,
15 Defendants argue, among other things, that Plaintiff failed to identify any particular policy
16 promulgated by Defendants and also failed to link any policy to his injury.  (Id. at 3).

17 **IV.   DISCUSSION**
18     a.   Legal Standards
19         i.   *Motions to Dismiss*

20       In considering a motion to dismiss, the Court must accept all allegations of material fact
21 in the complaint as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Hosp. Bldg. Co. v.
22 Rex Hosp. Trustees, 425 U.S. 738, 740 (1976).  The Court must also construe the alleged facts
23 in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),
24 abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni,
25 31 F.3d 813, 816 (9th Cir.1994) (per curiam).  All ambiguities or doubts must also be resolved
26 in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

27       A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the
28 complaint.  See Iqbal, 556 U.S. at 679.  "Federal Rule of Civil Procedure 8(a)(2) requires only

'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236 (1974).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and internal quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "'a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. 662 at 678 (citations omitted). "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

        ii. *Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment*

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires

Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

   iii. *Supervisory Liability*

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual

connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

   b. Analysis

      i. *Liability Based on Promulgation of Policies*

Plaintiff argues that defendants Clark and Bell are liable for the inadequate healthcare he received, not just because they are supervisors, but because they promulgated policies that were deficient.[4]

---

[4] As discussed above, supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior*.

While Plaintiff sufficiently alleges that Defendants are responsible for promulgating policies, Defendants are correct that Plaintiff does not provide any allegations regarding a specific policy promulgated by Defendants (such as allegations regarding a document that states a policy or a statement by a medical professional referring to such a policy, informal or otherwise), or sufficiently allege how a specific policy was the moving force behind a constitutional violation. Instead, Plaintiff's complaint includes conclusory allegations.

For example, Plaintiff alleges that, in 2013, medical experts stated in a report that, "'[a]t Corcoran, we found serious problems related to access, timeliness, and quality of care. Clinical systems that we found to be deficient included the intrasystem transfer process, nursing sick call, chronic disease management, urgent/emergent care, speciality services, and medication administration. The lack of a fully engaged management team and the absence of effective clinical supervision of the physicians are major factors contributing to these problems.'" (ECF No. 16, p. 6). Plaintiff further alleges that Defendants were aware that before, during, and after the incidents alleged in the complaint, "the California Office of the Inspector General ('OIG') was both periodically inspecting, reviewing and rating the state of medical care provided at CSP-COR and drafting and distributing 'Medical Inspection Reports.' Consistently through out the period of time in question, the overall quality of medical care at CSP-COR was rated as being 'Inadequate'." (Id. at 6-7).

None of these allegations involve any particular policy promulgated by Defendants, nor does Plaintiff explain how a policy was the driving force behind the constitutional deprivations. As an example, Plaintiff alleges that his rights were violated when, after his surgery, he was returned to Corcoran by automobile with no accommodations. (ECF No. 15, pgs. 10 & 13). However, there are no factual allegations suggesting that it was policy to transport prisoners in such a manner.

Plaintiff's conclusory complaints about the inadequacy of care at Corcoran is insufficient to state a supervisory liability claim against Defendants. See, e.g., Tennyson v. County of Sacramento, 2020 WL 4059568, at *3 (granting motion to dismiss supervisory liability claims where the plaintiff alleged that the defendant "knowingly participated in

creating and maintaining" a culture that led to the alleged constitutional deprivation).

                ii.   *Liability Based on Personal Participation*

Plaintiff also appears to argue that Defendants (or at least defendant Bell) personally participated in the constitutional deprivations. However, there are no factual allegations in the complaint that support this argument.

Plaintiff alleges that "Defendants Ward, Bell, McCabe and or their surrogates organized and made all the decisions with regard to whom the Plaintiff would be referred to for the purpose of performing the cervical spine surgery." (Id. at 9). However, these allegations are conclusory. Moreover, Plaintiff fails to link any particular defendant to the alleged deprivation. Plaintiff alleges that it may have been Defendants' surrogates (or defendant McCabe), and not Defendants, who were responsible. Plaintiff thus fails to plausibly allege that Defendants personally participated in deciding which doctor to refer Plaintiff to, and as discussed above, Defendants are not liable for the actions of their subordinates under a theory of *respondeat superior*.

Plaintiff also alleges that Defendants "Ward, Bell and McCabe as well as those persons transporting the Plaintiff, Does 9-10 were aware that Plaintiff would be probably injured" during his transportation back to Corcoran. (Id. at 10). These allegations are also conclusory. Plaintiff does not sufficiently allege that Defendants were aware of how Plaintiff was being transported, let alone that they knew it would lead to further injury.

Finally, Plaintiff points to defendant Bell's job responsibilities, which include "passing on 'difficult medical problems', directing the staff engaged in treating and caring for ward or inmate patients; directing the transfer of patients between institutions and outside facilities; and[] supervising post-operative care of patients." (ECF No. 26, p. 2). However, there are no factual allegations suggesting that she performed (or failed to perform) her job duties in a way that was deliberately indifferent to Plaintiff's serious medical needs. Even if defendant Bell negligently failed to perform her job duties, that is insufficient to state a claim for deliberate indifference.

Accordingly, Plaintiff fails to state a claim against Defendants based on their personal

participation in the alleged constitutional deprivations.

        iii. *Leave to Amend*

The Court will not recommend further leave to amend. Plaintiff has not requested leave to amend. Moreover, in granting Defendants' first motion to dismiss, the Court identified the deficiencies in Plaintiff's claim against Defendants and granted Plaintiff leave to amend. (ECF Nos. 14 & 15). As Plaintiff failed to cure the deficiencies identified by the Court in his First Amended Complaint, the Court will recommend that the claims against Defendants be dismissed without further leave to amend at this time.[5]

**V.     RECOMMENDATIONS**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 20) be GRANTED;
2. Defendants Clark and Bell be dismissed from this action, without further leave to amend; and
3. The Clerk of Court be directed to terminate defendants Clark and Bell on the Court's docket.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.

\\\
\\\
\\\
\\\
\\\

---

[5] Nothing in this order prevents Plaintiff from moving for leave to amend the complaint based on facts uncovered during discovery.

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 22, 2022**          /s/ Erica P. Grosjean
                                         UNITED STATES MAGISTRATE JUDGE